**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID PETERS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMUNITY EDUCATION | : | |
| CENTERS, INC., and JOHN DOES [1-100], in | : | NO. 11-850 |
| their official and individual capacities, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM RE: DEFENDANT'S PARTIAL MOTION TO DISMISS COUNTS I,**
**IV, AND V OF PLAINTIFF'S AMENDED COMPLAINT**

**Baylson, J.**                                                            **October 19, 2011**

## I.     Introduction

Plaintiff David J. Peters ("Peters") brings this action against Moving Defendant

Community Education Centers, Inc. ("CEC") and other unnamed defendants (collectively,

"Defendants"), for violations of 42 U.S.C. § 1983 (Counts I and II) and for Pennsylvania state

law claims of negligence (Count III), intentional infliction of emotional distress (Count IV), and

negligent infliction of emotional distress (Count V).  CEC moves to dismiss Plaintiff's Amended

Complaint with respect to Counts I, IV, and V, pursuant to Federal Rule of Civil Procedure

12(b)(6).  For the following reasons, CEC's Motion is DENIED.

## II.    Factual and Procedural History

Peters' Amended Complaint alleges the following facts.  Peters is a thirty-eight year-old

male and citizen of Pennsylvania.  Compl. ¶ 6.  CEC is a for-profit New Jersey corporation that

owns and operates the George W. Hill Correctional Facility ("the Prison") located at 500

1

Cheyney Road, Glen Mills, Pennsylvania.  Id. ¶¶ 7, 12.  Sometime prior to January 2009, CEC was contracted by the Delaware County Prison Board to assume the responsibility of comprehensive correctional services at the Prison.  Id. ¶ 13.

On September 17, 2010, a bench warrant was issued for Peters' arrest due to a failure to report to the Delaware County Department of Adult Probation and Parole.  Id. ¶ 15.  Peters' underlying conviction was for driving under the influence, in violation of 75 P.S. § 3802(a)(1). Id. ¶ 16.  Beginning on October 6, 2010, Peters was incarcerated at the Prison.  Id. ¶ 17.

Upon reporting to the Prison, Peters immediately notified Prison authorities that he suffers from osteogenesis imperfecta (a.k.a. brittle bone disease, or brittle bone syndrome).  Id. ¶ 19.  Accordingly, on or before October 18, 2010, Prison officials issued Peters a "special needs pass."  Id. ¶ 20.  That pass explicitly indicated that Peters needed to be assigned to a "lower bunk/tier" to limit the risk that he might fall or suffer other injury.  Id. ¶¶ 21-22; Exh. A.

Despite CEC's actual knowledge that Peters has a serious medical condition, and despite the issuance of the special needs pass, Peters was housed on a top bunk during his incarceration. Id. ¶ 23.  On numerous occasions, Peters verbally complained to Prison employees about being housed in the top bunk, but his complaints were ignored.  Id. ¶¶ 24-25.

During the evening/night hours of October 25, 2010, Peters awoke form his sleep to use the restroom.  Id. ¶ 26.  During his descent from the top bunk, he fell to the ground.  Id. ¶ 27. As a result of the fall, Peters fractured the radius and ulna bones of his left forearm and also injured his ankle.  Id. ¶ 28-29.

Peters was taken to and treated at the Prison's in-house medical treatment facility.  Id. ¶ 30.  After a period of time spent "beleaguering" in pain, he arm was casted—but not set—by

2

CEC's medical staff.   Id.  Since the time of his treatment, Peters has suffered intense and chronic pain in his left arm and right foot; he also suffers from decreased mobility of those body parts. Id. ¶ 34.  His left wrist and forearm are now deformed and in need of further medical attention, potentially including surgery or fusion.  Id. ¶ 33-34.  His right foot may also require further medical attention, possibly due to fractures.   Id. ¶ 35.

On April 13, 2011, Peters filed an Amended Complaint alleging violations under 42 U.S.C. § 1983 of his Eighth Amendment rights—specifically, his right not to be subjected to cruel and unusual punishment (Count I) and his right to be protected from severe physical and mental injury due to the Prison's failure to protect him/prevent harm by adequately training its employees (Count II).  Peters also sought relief for state law claims of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress (Counts III, IV, and V, respectively).  (ECF No. 11.)  On May 3, 2011, CEC filed a Partial Motion to Dismiss Counts I, IV, and V.  (ECF No. 13.)  Peters responded on May 16, 2011, and CEC did not reply.  (ECF No. 15.)

After Peters' response had been submitted and while this Motion was pending, the parties entered into a stipulation providing that Peters had abandoned all claims that "allege[d] a breach of a professional duty as it relates to the provision of medical care and the medical treatment provided to the Plaintiff."  Stipulation and Order of September 20, 2011.  (ECF No. 18.)  The parties further stipulated that, although Peters had abandoned all claims sounding in professional negligence, he was "not waiving his claims of standard negligence as pleaded in his Amended Complaint as [they] relate[ ] to a failure to protect, or prevent harm."  Id.

### III.   Summary of CEC's Motion

CEC attacks Peters' Amended Complaint on multiple grounds.  First, with respect to Count I, CEC contends that Peters failed to state a claim under § 1983 for cruel and unusual punishment based on inadequate medical care in that Peters failed to plead that prison officials acted with "deliberate indifference" in providing his care.  See Estelle v. Gamble, 429 U.S. 97, 105 (1976).  CEC also argues that Count I must be dismissed because Peters did not adequately plead that CEC, a private contractor, violated his 8th Amendment rights as the result of a "policy or custom."  Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658 (1978).

Second, CEC claims that Count IV must be dismissed because Peters has not alleged conduct that is "so outrageous and so extreme in degree" as to constitute a plausible claim for intentional infliction of emotional distress.  Cox v. Keyston Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988).

Third, CEC contends that, with respect to Count V, Peters has offered no factual allegations to support that (a) CEC had a "contractual" or "fiduciary" duty toward Peters, or that (b) Peters was in a "zone of danger;" therefore, Peters fails to state a claim for negligent infliction of emotional distress.

Finally, CEC argues that Peters is not entitled to punitive damages because he has not adequately pleaded "evil motive or intent, or . . . reckless or callous indifference to [ ] federally protected rights" on the part of Prison officials.  Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996) (internal quotation marks omitted).

4

### III.    Legal Standard

#### A.    Motion to Dismiss for Failure to State a Claim

Under the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2), a

complaint must contain only "a short and plain statement of the claim showing that the pleader is

entitled to relief."  To survive a motion to dismiss for failure to state a claim pursuant to Federal

Rule of Civil Procedure 12(b)(6), the complaint must plead sufficient factual allegations, that,

taken as a whole, state a facially plausible claim to relief.  Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007).  A complaint satisfies the threshold of facial plausibility if "the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly,

550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," are insufficient to establish plausible allegations to survive the motion.

Id. at 1949 (citing Twombly, 550 U.S. at 555).

In analyzing the complaint, the court must "'accept all factual allegations as true, construe

the complaint in the light most favorable to the plaintiff, and determine whether, under any

reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d

224, 233 (3d Cir. 2008)).  However, the court may disregard any legal conclusions in the

complaint.  Id. at 210-11 (citing Iqbal, at 1949).

Generally, the district court may consider only the facts alleged in the complaint and its

attachments on a motion to dismiss.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d

1250, 1261 (3d Cir. 1994).  The court may also take into consideration "an undisputedly

authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV.    Discussion

### A.    Count I

#### 1.  "Deliberate Indifference"

CEC first argues that Count I must be dismissed insofar as it seeks relief for failure to provide adequate medical treatment, because Peters has not adequately alleged that his treatment entailed "deliberate indifference to [his] serious illness or injury."  Estelle, 429 U.S. at 105. CEC's contention is moot in light of the Stipulation entered into by the parties after they briefed this Motion.  Peters' theory of liability in Count I is now limited to allegations of CEC's general failure to protect Peters from "a substantial and unreasonable risk of serious harm" by, for example, housing him in violation of his special needs pass.  Compl. ¶¶ 44-45.  He has stipulated away his right to recover in this case for the inadequacy of his medical treatment.

#### 2. Liability under Monell

CEC contends that Peters has failed to plead under Count I that his constitutional rights were violated pursuant to a municipal policy or custom, see Monell, 436 U.S. at 691.

The existence of a policy or custom can be established by (1) showing that a "decisionmaker possessing final authority to establish municipal policy with respect to the action issued an official statement of policy," or (2) by demonstrating that, though not specifically endorsed or authorized by law, the "practices of state officials [are] so permanent and well settled that they operate as law."  Jimemez v. All Am. Rathskellar, 503 F.3d 247, 250 (3d Cir. 2007)

(internal quotation marks omitted).  Once a policy or custom is identified, a plaintiff must also establish that the municipality maintained the policy or custom with "deliberate indifference" to the purported constitutional deprivations.  Id.

Here, in the section of the Amended Complaint entitled "Count I," Peters alleges that CEC "intentionally and/or recklessly" subjected him to conditions posing a substantial and unreasonable risk of harm.  Compl. ¶ 44.  The section also incorporates by reference facts alleging, inter alia, that CEC knew of Peters' disease but failed to house him in a lower tier bunk, and did not reassign him despite his repeated reminders and complaints.  Id.  ¶¶ 19-25.  These statements are sufficient to plead that whatever municipal policy or custom allegedly existed was maintained with deliberate indifference to his rights.

What Peters did not plead in the "Count I" section, however, nor in the preceding paragraphs that are explicitly incorporated by reference, is the existence of a specific policy or custom.  Rather, Peters waited until the section entitled "Count II" (that is, the section immediately following "Count I," which also assert a claim under § 1983 based on 8th Amendment rights), to plead the existence of an "informal custom of recklessly ignoring the medical needs of prisoners throughout the prison facility."  Compl. ¶ 55.  That statement, coupled with Peters' factual assertion that the Prison refused to move Peters to a lower bunk despite actual notice of his condition and after repeated reminders that his special needs pass had not been honored, adequately pleads the existence of a municipal custom at least with respect to Count II (and, not insignificantly, CEC's Motion does not seek to dismiss Count II for failure to state a claim).  CEC argues, however, that Peters' failure to include a similar statement in his "Count I" section entitles it to have that claim dismissed.

Under the circumstances, this Court is unpersuaded.  The Complaint, <u>taken as a whole</u> and construed in the light most favorable to the plaintiff, can be fairly interpreted as alleging the existence of an informal custom, even with respect to Count I.  <u>See Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). Though Peters did not reassert the existence of that custom in both of his first two Counts, the informal custom directly alleged in the "Count II" section is logically applicable to the "Count I" section, which asserts a similar claim under § 1983 premised on nearly identical facts and allegations.  Therefore, this Court declines to dismiss Count I for failure to plead the existence of an applicable policy or custom under <u>Monell</u>, 436 U.S. 658.

**B. Count IV**

CEC contends that Peters has not pleaded conduct sufficiently outrageous, extreme, and intolerable to state a claim for intentional infliction of emotional distress ("IIED").  <u>See</u> <u>Cox v. Keyston Carbon Co.</u>, 861 F.2d 390, 395 (1988) (applying Pennsylvania law).  Under Pennsylvania law, a claim of IIED requires a plaintiff to allege: (1) that the defendant's conduct was intentional or reckless; (2) that defendant's conduct was extreme and outrageous; (3) that defendant's conduct caused emotional distress; and (4) that the resultant emotional distress was severe.  <u>Brown v. Udren Law Offices, P.C.</u>, 2011 WL 4011411, at *3 (E.D. Pa. Sept. 9, 2011) (citing <u>Bruffett v. Warner Commc'ns, Inc.</u>, 692 F.2d 910, 914 (3d Cir. 1982)).  Furthermore, the plaintiff must allege that the relevant conduct resulted in physical injury to the plaintiff.  <u>Clark v. Conahan</u>, 737 F. Supp. 2d 239 (M.D. Pa. 2010) (applying Pennsylvania law).

As discussed above, Peters alleges, <u>inter alia</u>, that the Prison refused to abide by a special needs pass that required him to be housed on a lower bunk, despite actual notice of his

osteogenesis imperfecta and despite multiple subsequent reminders and complaints from Peters.

As a result, Peters fell to the ground and broke the radius and ulna bones in his arm, as well as

possibly his ankle/foot.  The fall and broken bones are precisely the type of risk that Peters had

notified the Prison about and had received a special needs pass to avoid.  In light of these facts,

and in light of the absence of any instructive case law cited by CEC in which a court in

Pennsylvania or the Third Circuit determined that, as a matter of law, similar conduct did not

meet the required threshold of outrageousness, this Court is unwilling to conclude that Peters'

Count IV must be dismissed.  Of course, CEC remains free to attempt to demonstrate at summary

judgment or at trial that the extent of the actual misconduct did not, in fact, rise to the level

necessary for IIED.

### C. Count V

#### 1. The Duty Owed by CEC

CEC argues that Peters has not stated a claim for negligent infliction of emotional distress

("NIED") because he has not pleaded facts to support the existence of a "contractual or fiduciary

duty" owed to him by Prison officials.  Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197 (Pa.

Super. 2008).

Notably, CEC quotes the portion of the Toney opinion that refers specifically to a

"contractual or fiduciary duty;" just one paragraph later, however, Toney states that a NIED

claim requires simply "that the defendant owed a duty of care to the plaintiff."  Id. at 198.

Indeed, Toney employs the terminology of a "duty of care" and a "contractual or fiduciary duty"

interchangeably.  Id. at 198 (stating that a NIED claim requires a plaintiff "to establish the

elements of a negligence claim"); id. (holding that the plaintiff had satisfied the pleading

requirement for her "'duty of care' action").  Compare also, e.g., Brown v. Phila. College of Osteopathic Med., 760 A.2d 863, 868 (Pa. Super. 2000) (stating that a plaintiff alleging a NIED claim must prove the elements of a negligence claim, including "that the defendant owed a duty of care to the plaintiff"), with, e.g., Armstrong v. Paoli Mem. Hosp., 633 A.2d 605, 615 (Pa. Super. 1993) (stating that a plaintiff alleging a NIED claim must show "a pre-existing duty of care, either through contract or fiduciary duty").

In light of the ambiguity in the case law and the absence of a Pennsylvania Supreme Court decision on point, this Court declines in adjudicating a Rule 12 motion to dismiss to construe the duty required for a NIED claim under Pennsylvania law as anything different or more stringent than the duty of care required for ordinary negligence, though CEC may reassert the issue on summary judgment or at trial.  Thus, in the present circumstances, CEC's attack is without merit—in Pennsylvania, prison officials owe prisoners a duty of care, at least insofar as they "must take reasonable measure[s] to guarantee the safety of inmates."  Whitley v. Albers, 475 U.S. 312, 320 (U.S. 1986); see also Cochrane v. Kopko, 975 A.2d 1203, 1206 (Pa. Cmwlth. 2009) (holding that "inmates are analogous to invitees for purposes of determining the duty of care owed by prison officials").  The Complaint adequately alleges that, at all relevant times, Peters was an inmate in CEC's custody and control and was owed the requisite duty to state a claim for NIED.  Compl. ¶¶ 17, 74.

### 2. "Zone of Danger"

Pennsylvania law permits actions for NIED in the following four factual scenarios situations: (1) where there is a duty of care, or a contractual or fiduciary duty, owed to the plaintiff; (2) where the plaintiff was subjected to physical impact; (3) where the plaintiff was in a

"zone of danger;" or (4) where the plaintiff observed the tortious injury of a close relative.  See Toney, 961 A.2d at 197.  Defendant asserts that "it appears that Plaintiff is attempting to proceed under either theory (1) or theory (3)," and that neither theory can survive a motion to dismiss. Def. Br. at Part B.3.  This Court held supra that Peters' Count V adequately pleaded the existence of a duty owed to him by CEC (i.e., theory (1)); accordingly, Count V survives CEC's Motion on that basis alone, and the Court need not reach the question of whether Count V could survive on a "zone of danger" theory, as well.[1]

### D. Punitive Damages

CEC's final challenge to the Complaint is that Peters is not entitled to punitive damages because he has not adequately pleaded "evil motive or intent, or . . . reckless or callous indifference to [ ] federally protected rights" on the part of Prison officials.  Coleman v. Kaye, 87 F.3d 1491, 1497 (3d Cir. 1996) (internal quotation marks omitted).  CEC's argument is without merit.  Peters' allegations that prison officials had actual knowledge of his disease, failed to honor his special needs pass, and ignored multiple complaints from Peters states a plausible basis for punitive damages that is adequate to survive a motion to dismiss.

## VI. Conclusion

For the reasons set forth above, CEC's Partial Motion to Dismiss is DENIED.  An appropriate Order follows.

O:\CIVIL 11-12\11-850 Peters v. Community Educ Ctr\Peters MTD memo.wpd

---

[1] The Court notes that CEC's assumption that Peters is not also proceeding on a "physical impact" theory of NIED is unwarranted in light of the explicit reference to "physical impact" under Count V and the Complaint's factual averments regarding Peters' fall and resulting injuries.  See Def. Br. at Part B.3.  Not surprisingly, Peters asserts in his response that he is indeed pursuing a "physical impact" theory of NIED liability.  See Pl. Br. at 11. Accordingly, CEC's failure to substantively challenge this theory arguably provides a second, independent basis to deny its Motion with respect to Count IV, though the Court intimates no view at this time regarding the merits of that theory or the adequacy of its pleading.